# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DARLENE B. MASON o/b/o**
**BDM (Minor Child)**                                                      **CIVIL ACTION**

**VERSUS**

**MICHAEL J. ASTRUE, COMMISSIONER**            **NO. 09-851-BAJ-CN**
**OF SOCIAL SECURITY**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, May 20, 2011.

                                                          **MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DARLENE B. MASON o/b/o<br>BDM (Minor Child) | CIVIL ACTION |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY | NO. 09-851-BAJ-CN |

## MAGISTRATE JUDGE'S REPORT

Ms. Darlene B. Mason brings this suit on behalf of her minor child, BDM, seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). In making that final decision, the Administrative Law Judge (ALJ) followed the three step sequential evaluation process for determining eligibility for childhood disability benefits.[1]

## FACTS AND PROCEDURAL HISTORY

Darlene B. Mason, claimant's mother, brought this action pursuant to 42 U.S.C. § 405(g) on claimant's behalf for review of the final decision denying her claim for SSI benefits. Plaintiff filed an SSI application on her son's behalf on March 7, 2006, due to chronic asthma. (Tr. 12, 62-64, 77.)[2] BDM (claimant), was born on June 29, 2000, and was of school age at the time of the ALJ's decision. The Agency denied plaintiff's claim initially on September 6, 2006, and plaintiff made a timely request for an administrative hearing.

---

[1] 20 C.F.R. §§ 416.924.

[2] Plaintiff's alleged onset was June 29, 2002, but plaintiff did not file the application for SSI until March 7, 2006. SSI benefits cannot be obtained retroactively. 20 C.F.R. § 416.335, thus the period of review is from March 7, 2006 through the date of the ALJ's decision, September 26, 2008.

(Tr. 4-8.) A video administrative hearing was held May 13, 2008, and plaintiff testified on her son's behalf. (Tr. 23-38.)[3] On September 26, 2008, the ALJ rendered a decision that claimant was not disabled. (Tr. 12-22.) On June 8, 2009, the Appeals Council denied plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. This appeal was timely taken.

## ANALYSIS

**Childhood Disabilities**

In determining whether a child is entitled to childhood disability benefits, the regulations set forth a three-step sequential evaluation process – (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the severe impairment(s) meet, medically equal, or functionally equal the severity of any impairment listed in Pt. 404, Subpt. P, App. 1 – Listings.[4]

If the child is found to have a medically determinable physical or mental impairment resulting in marked and severe *functional* limitations, and is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, then the child is entitled to disability benefits.[5] The regulations define "marked and severe functional limitations" as meaning that the child's impairment or combination of impairments must meet, medically equal, or functionally equal the *severity* of a listed

---

[3] Pursuant to the decision and plaintiff's appeal, the claimant's mother appeared in Baton Rouge and the ALJ presided over the hearing from Baton Rouge. The claimant was represented by Shirley S. Lawson, a non-attorney representative. However, the front page of the transcript indicates that the hearing was held in Alexandria and that Ms. Mason appeared in person and was represented. (Tr. 25.)

[4] 20 C.F.R. § 416.924.

[5] 42 U.S.C. § 1382c(a)(3)(C)(I).

impairment. The listing level severity for these domains is defined as "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[6]

**Standard of Judicial Review**

In reviewing the Commissioner's decision denying childhood disability income benefits, the Court is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.[7] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision.[8] Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.[9] A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.[10]

---

[6] 20 C.F.R. § 416.924(d); 20 C.F.R. §§ 416.926a(a) and (d). The six domains are: Acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-being.

[7] Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005); Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[8] Id.

[9] Id.

[10] Id.

4

**The Three-Step Sequential Evaluation Process**

In the present case, the claimant has not engaged in substantial gainful activity and the ALJ determined that claimant's impairments (chronic asthma and a specific learning disability and speech/language disorder) are severe impairments because he has more than slight abnormalities and more than minimal function limitations. (Tr. 15, Finding 3.) Therefore, the ALJ moved to the third step where it must be determined if these severe impairments meet, medically equal, or functionally equal the severity of any impairment listed in pt. 404, subpt. P, app. 1 (Listing). Listing 103.03 sets forth the criteria to establish a disability due to asthma in a child's case.

In order to meet these criteria a claimant must provide evidence to show that he meets or equals one of four types of medical evidence: 1) FEV1 (forced expiratory volume) equal to or less than the value specified in Table 1 of 103.02;[11] 2) Attacks in spite of prescribed treatment and requiring physician intervention occurring at least once every 2 months or at least six times a year;[12] 3) Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic broncho-dilators with either persistent prolonged expiration with adiographic or other appropriate imaging techniques with evidence of pulmonary hyperinflaction or peribronchial disease or short courses of corticosteriods that average

---

[11] See 20 C.F.R. Pt. 404, Subpt. 1, § 103.3A.

[12] See 20 C.F.R. Pt. 404, Subpt. 1, § 103.3B.

more than five days a month for a least three months during a 12-month period;[13] and 4) growth impairment as set forth in section 100.00.[14]

In order to meet a listed impairment, a claimant must manifest all of the specified criteria of a particular listing to qualify for disability under that listing.[15] The ALJ determined that claimant's impairment of asthma does not meet or medically equal a listed impairment. (Tr. 15.) Plaintiff argues that her son meets Listing 103.03 B relative to the number of attacks he's had.[16] Plaintiff asserts that BDM was hospitalized in April 2007 and November 2007[17], and had emergency room visits in April 2005, January 2006, March 2006, July 2007, and April 2008. The April 2005 and January 2006 visits are outside of the applicable time period (See footnote 2) and therefore, will not be considered. Plaintiff argues that these visits and hospitalizations occurred despite the use of prescribed medications and home nebulizer treatments. The regulations provide, as stated above, that the attacks must occur at least once every two months or at least six times a year, in spite of prescribed treatment and requiring physician intervention. It further states that each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks. The medical evidence in the record shows that plaintiff was seen during the applicable time period (March 7, 2006 - September 26, 2008) on September 3, 2006 (Tr. 208), April 15, 2007 (Tr. 176), and July 9, 2007 (Tr. 226) in the Our Lady of the Lake

---

[13] See 20 C.F.R. Pt. 404, Subpt. 1, § 103.3C.

[14] See 20 C.F.R. Pt. 404, Subpt. 1, § 103.3D.

[15] Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

[16] Plaintiff's Brief, p. 19. A claimant need only show that he meets or equals one of the four types of medical evidence.

[17] There are no medical records for this hospital stay, only a note from Our Lady of the Lake Children's Hospital indicating that claimant was hospitalized from 11/4/07 to 11/7/07. (Tr. 319.)

Emergency Room for respiratory difficulties/asthma.[18] The medical evidence in the record also indicates a two-day hospital stay on April 16-18, 2007 (Tr. 245) and as noted above a three-day hospital stay on November 4-7, 2007 (Tr. 319), with no medical records provided to prove that the stay was related to his asthma. Consequently, BDM has a total of 3 ER visits and 1 hospital stay in 12 month period from April 2006 through April 2007 for the treatment of asthma. Therefore, plaintiff does not meet the criteria of 103.3B.

Nor does Plaintiff meet any of the other 3 types of medical evidence set forth above. The record contains several FEV1 test results that show that BDM did not meet the requirement for the 75% or less result in section A. Plaintiff's test results range from 85%, 75%, 76%, 93%, 91% and 81%. (Tr. 156, 279, 280, 282, 284, 285.) The record does not establish persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods as required in section C. And lastly, there is no medical evidence establishing a growth impairment as required in section D.

Further, plaintiff's treating physician, Dr. David E. Thomas (pediatric pulmanologist) completed a form for providing medial signs or symptoms based upon his treatment to determine whether BDM met or equaled the Listing for asthma. (Tr.163-169).[19] Dr. Thomas did not indicate that BDM met any of the criteria of #9 on the form, which inquires as to a child satisfying the asthma listing standard criteria, as he did not write anything on the form, but simply states elsewhere on the form that BDM suffers from asthma; has prolonged expiration; has dyspnea on exertion and has aggravating factors of allergens and stress.

---

[18] Plaintiff argues that there were emergency room visits in March 2006 and April 2008, however there are no medical records to support this evidence.

[19] This form is not dated. However, it is assumed that it was on or after November 6, 2006, as Dr. Thomas indicates on the form that his most recent exam was November 6, 2006.

7

While Dr. Thomas lists the dates of ER and hospital visits on this form, only one is within the relevant time period. It is important to note that Dr. Thomas also indicates on this form that his treatment is very effective when taken as prescribed. (Tr. 165.) Then, on September 1, 2006, Dr. Thomas stated, "Based on this patient's current clinical status and medical condition, I cannot make the statement that they are medically disabled." (sic) (Tr. 154.) On July 1, 2008, Dr. Thomas noted that BDM had an FEV1 of 71 percent. (Tr. 269.) Plaintiff must provide evidence that supports each of the criteria for any listing that he allegedly meets. Plaintiff has not carried this burden with regards to BDM's asthma impairment.

The record evidence did not establish that BDM met or equaled a listing for a speech impairment or learning disorder. Plaintiff does not allege that BDM met or equaled any specific listing with regard to his speech impairment or learning disorder.[20] On May 4, 2006, claimant was evaluated by Dr. Charmaine Venters. Dr. Venters noted that BDM has never received speech therapy and that he was to be tested next year by Pupil Appraisal Services to determine if he needed speech therapy and resource classes. The examination revealed that claimant's lungs were clear, his fine and gross motor skills were normal and Dr. Venters diagnosed claimant with asthma, learning problems, behavior problems and speech delay. (Tr. 139-142.)

BDM was then evaluated by Dr. Marc Zimmerman on June 13, 2006. At this time it was reported that claimant suffers from asthma, treated with medication. While his mother described him as having a speech problem and being hyped up, his mental status

---

[20] Listing for a speech impairment or learning disorder would come under 20 C.F.R. Pt. 404, Subpt. P. App. 1 §§ 102.00, 112.00, Special Senses and Speech and Mental Disorders, respectively.

examination revealed that BDM's speech was clear and easily understood; his affect was full range and appropriate for his speech at all times. BDM's attention and concentration appeared to be adequate for all tasks asked of him, and he did not display impulse control problems during the evaluation. Dr. Zimmerman diagnosed specific learning disability. Tr. 153-156.)

BDM was evaluated by speech pathologist, Karen Caffey on June 26, 2006. The evaluation revealed claimant was 95% intelligible in conversation speech, however receptive and expressive scores were significantly below normal ranges. Dr. Caffey noted that BDM had a mild speech deficit and moderate to moderate/severe receptive and expressive language deficits. Her recommendation was that BDM begin speech and language therapy when school begins, at least twice weekly. (Tr. 159.)

In August of 2006, BDM was evaluated by Dr. Karen R. Speir who observed that BDM's test scores were within one standard deviation or less than one-half year below his age/grade expectation, and opined that he did not meet, medically equal or functionally equal a Listing. (Tr. 143-145.)

Therefore, the Court finds that there is substantial evidence to support the ALJ's decision that claimant does not meet a listed impairment and that plaintiff has failed in her burden to prove otherwise. The Court further finds that the ALJ followed the proper legal standard in making this determination.

If a child does not meet a listed impairment, the ALJ must then determine if the child has an impairment that *functionally* equals a listed impairment. The ALJ makes this determination by examining the record for evidence showing how the child performs in the six domains of functioning, i.e., Acquiring and using information; attending and completing

tasks; interacting and relating with others; moving about and manipulating objects; caring for him/herself; and health and physical well-being. A child must exhibit "marked" limitations in at least two of the domains and an "extreme" limitation in at least one domain.[21] A child has a "marked" limitation in a domain when the impairment interferes seriously with his ability to independently initiate, sustain, or complete activities.[22] A child has an "extreme" limitation in a domain when the impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities.[23] (Emphasis by the Court.)

The ALJ found that claimant has less than marked limitation in the domains of acquiring and using information; interacting and relating with others; moving about and manipulating objections; and, health and physical well-being. (Tr. 17-22.) The ALJ found that claimant has no limitation in the domains of attending and completing tasks and caring for yourself. (Tr. 18, 20-21). Plaintiff only disputes the findings relative to acquiring and using information and health and physical well-being.

The domain of acquiring and using information considers how well a child is able to acquire or learn information and how well a child uses the information he has learned.[24] The regulations' examples of limited functioning in this domain, which the Court will list, do not necessarily described "marked" or "extreme" limitations. However, as stated above,

---

[21] 20 C.F.R. § 416.926a, *supra.*

[22] Functioning may be seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. A marked impairment means a limitation that is more than moderate but less than extreme.

[23] Functioning may be very seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. An extreme impairment means a limitation that is more than marked, and is the rating given to the worst limitations.

[24] 20 C.F.R. 416.926a(g).

in order to have a "marked" limitation, the impairment must interfere seriously with one's ability to independently initiate, sustain, or complete activities. And, in order to have an "extreme" limitation, the impairment must interfere very seriously with one's ability to independently initiate, sustain, or complete activities. Examples in this domain are: 1) does not understand words about space, size, or time (e.g., in/under, big/little, morning/night); 2) cannot rhyme words or the sounds in words; 3) has difficulty recalling important things learned in school yesterday; 4) has difficulty solving mathematics questions or computing arithmetic answers; or 5) talks only in short, simple sentences, and has difficulty explaining what he means. Plaintiff argues that BDM has a marked limitation in this domain and focuses on the evaluations performed by Dr. Venters, Dr. Zimmerman, and speech pathologist Caffey. As noted above, these evaluations did not indicate that BDM had marked limitations. While it is agreed that BDM does have a learning disability, there is no evidence to support that his limitations *seriously* interfere with his ability to acquire and use information. The only evidence provided by plaintiff in this regard would be BDM's 1st grade report card from Lasalle Elementary School. (Tr. 101.) This report card indicates that BDM does have problems in language/spelling, reading, and math, however he is not failing any of these subjects. In fact, it shows that BDM is capable of passing these subjects as he attained grades of C, B and A, respectively, in the 2nd 9-weeks. Further, BDM's mother testified that he's doing poorly in school because he misses so much school due to his asthma. (Tr. 16.) However, as defendant Commissioner points out, the 60 absences on his report card are inconsistent with his emergency room visits and his treatment with doctors. For instance, BDM's mother claims that she had to keep him out of school during April and May 2007, but Dr. Thomas never saw him during that time. (Tr. 268-82.)

Therefore, the Court finds that there is substantial evidence to support the ALJ's finding of "less than marked limitation" in the domain of Acquiring and Using Information.

The domain of health and physical well-being considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.[25] The examples of limitations for this domain are 1) generalized symptoms, such as weakness, dizziness, agitation (e.g. excitability), lethargy (e.g. fatigue or loss of energy or stamina), or psychomotor retardation because of any impairments(s); 2) somatic complaints related to an impairment (e.g. seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); 3) limitations in physical functioning because of treatment (e.g. chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); 4) exacerbations from an impairment that interfere with physical functioning; or, 5) medical fragility requiring intensive medical care to maintain level of health and physical well being.  Plaintiff argues that the ALJ erred in finding a less than marked limitation in this domain.  Plaintiff discusses all of the above medical evidence in her argument to support a "marked limitation" in this domain, however the Court is of the opinion that the evidence does not support a finding of "marked limitations." The Court does not feel it necessary to reiterate all of the medical evidence at this point, but will point out that BDM has been found to suffer with a severe impairment of asthma.  However, the latest records from plaintiff's treating physician, Dr. Thomas, indicate that the asthma has improved. (Tr. 268.)  Further, Dr. Thomas, during his long

---

[25] 20 C.F.R. 416.926a(l).

period of treatment, never placed restrictions on BDM's activities and never opined that BDM's asthma rendered him disable.[26] In fact, Dr. Thomas stated that his treatment of BDM was "very effective when taken as prescribed." (Tr. 165.) The Fifth Circuit has held that conditions controlled or controllable by treatment are not disabling. *See*, Epps v. Harris, 624 F.2d 1267, 1270 (5th Cir. 1980).

The ALJ concluded that the claimant's impairments did not "functionally equal" a listing as they did not result in at least two areas of marked limitation or at least one area of extreme limitation of functioning. The Court agrees, and Plaintiff has failed her burden to prove the contrary.

For the above reasons, the Court finds that 1) there is sufficient evidence in the record to support the ALJ's decision; 2) the ALJ followed the proper legal standards in making his decision that claimant's impairments do not functionally equal any listed impairment found in Appendix 1, and 3) the ALJ was correct in finding claimant not disabled.

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the Plaintiff's appeal be dismissed, with prejudice, and judgment be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, May 20, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[26] See, Perez v. Barnhart, 415 F.3d at 465-66 (5th Cir. 2005)( opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's condition and treatments should be accorded considerable weight in determining disability.)